IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Eric Antonio–Marin Arzu, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:22cv913 (LMB/IDD) |
| ) | |
| Director Harold Clarke, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM OPINION

Eric Antonio–Marin Arzu ("Arzu" or "petitioner"), a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his July 12, 2019 conviction in the Circuit Court of the City of Portsmouth, Virginia for aggravated malicious wounding. The respondent has filed a Rule 5 Answer and a Motion to Dismiss[1] with supporting briefs and exhibits, [Dkt. Nos. 18–20, 32–35]. Arzu has opposed respondent's motion to dismiss [Dkt. Nos. 27, 38] and filed a "Rule 55 Motion," seeking a default judgment. [Dkt. No. 37]. Accordingly, this matter is ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss will be granted, the Rule 55 Motion will be denied, and the petition will be dismissed with prejudice.

---

[1] Respondent originally filed a Rule 5 Answer and Motion to Dismiss on October 19, 2022; however, they were dismissed without prejudice on April 14, 2023 because the Answer did not comply with the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. [Dkt. No. 31] (citing Sanford v. Clarke, 52 F.4th 582, 584, 586 (4th Cir. 2022)). On May 9, 2023, respondent filed a second response to the Petition, which incorporated the Brief filed in support of the October 19, 2022 response. [Dkt. No. 32] at ¶ 1.

## I. Procedural History

On October 4, 2018, a grand jury returned indictments against petitioner for malicious wounding, aggravated malicious wounding, and attempted murder.[2] (CCT at 1–2). On March 11, 2020, Arzu, who was represented by counsel, waived his right to trial by jury and was tried by the circuit court. At the end of the trial, the judge granted defense counsel's motion to strike the malicious wounding and attempted murder charges and convicted Arzu of aggravated malicious wounding. (Id. at 55). On July 9, 2019, Arzu was sentenced to twenty years in prison with ten years suspended. (Id. 79–80). The final judgment order was entered on July 12, 2019, and Arzu's post–conviction pro se motion for reconsideration was denied on October 9, 2019.

Arzu, by counsel, filed a petition for appeal in the Court of Appeals of Virginia raising two assignments of error by the trial court:

1) The trial court erred in denying Defendant's motion to strike the evidence of Aggravated Malicious Wounding of Charles Sanderson at the conclusion of all the evidence as insufficient because the evidence failed to prove Sanderson was severely injured and sustained a permanent and significant physical impairment.

2) The trial court erred in denying Defendant's motion to strike the evidence of Aggravated Malicious Wounding of Charles Sanderson at the conclusion of all the evidence as insufficient because the evidence showed Defendant acted in self–defense.

[Dkt. No. 34–6] at 12.

The Court of Appeals denied the petition for appeal on January 29, 2020. In its denial order, the court found that the evidence established that the victim, seven months after the incident still "had visible scars on his hands, head, neck, shoulder, and leg," had "lost feeling in his left leg and had numbness and pain in his hands," had "required placement of a plate and a rod in his leg after [petitioner] broke it with the machete," and "walked with a limp, . . . had reduced use of his hands . . . [and] could no longer write." [Dkt. No. 34–5] at 4. Based upon that

---

[2] The abbreviation "CCT at ___" is a reference to the circuit court's manuscript record of the criminal proceedings.

evidence, the court held the evidence was sufficient to prove that the victim "was severely injured and had suffered permanent and significant impairments as contemplated in Code § 18.2–51.2." Id. Regarding Arzu's argument that he acted in self–defense, the court found that while the victim "struck the first blow . . . [the victim] was unarmed." Id. at 5. In contrast, petitioner "armed himself and pursued [the victim], who was then fleeing." Consistent with precedent, petitioner could not "claim self–defense because he struck a retreating victim." Id. (citing Avent v. Commonwealth, 279 Va. 175, 199 (2010) (quoting Yarborough v. Commonwealth, 217 Va. 971, 975 (1977)).

Through counsel, Arzu filed a petition for appeal in the Supreme Court of Virginia raising three assignments of error. In addition to the two assignments of error he had in the Court of Appeals of Virginia, Arzu added a claim that "[t]he Court of Appeals erred in holding that Defendant could not claim justifiable self–defense because he was not without any fault on his part in provoking or bringing on the difficulty." Arzu v. Commonwealth, Record No. 211229, at 13. The court refused the petition on October 30, 2020.

On March 26, 2021, Arzu filed a petition for a writ of habeas corpus in the circuit court raising three claims of ineffective assistance of counsel. Specifically, Arzu alleged that counsel was ineffective for not moving to strike at the end of the trial on the jurisdictional ground that the Commonwealth never alleged or established beyond a reasonable doubt that the crime happened in the Commonwealth of Virginia (Claim (a)(1)); failing to establish a lack of malice or intent of aggravated malicious wounding (Claim (a)(2)); and failing to establish intrinsic fraud because Arzu did not cause the victim's injuries and failing in her duty to put the Commonwealth's case to the test. (Claim (a)(3)). [Dkt. 20–4] at 3.

The circuit court found that all three claims of ineffective assistance of counsel failed to satisfy either prong of the deficient performance and prejudice test established by Strickland v. Washington, 466 U.S. 668 (1984), and dismissed the petition in an order entered on December 2,

3

2021. [Dkt. No. 20-4] at 9–15. In that same order, the court summarized the evidence as follows:

> On July 27, 2018, Charles Sanderson gave a family friend, Denzel Chandler, a ride to a trailer park in Portsmouth, where Chandler intended to meet Arzu at his house to collect some money. (3/11/19 Trial Transcript at 14–16, 36, 84 (hereinafter "Tr. at __")). Sanderson did not know Arzu. (Tr. at 16–17). Upon arriving at the destination, both Sanderson and Chandler got out of Sanderson's truck, and Chandler began to speak with Arzu. (Tr. at 16). Sanderson was "not involved" in the conversation between Chandler and Arzu, "stay[ing] to himself and just standing there. Id. After a "quick" conversation, Chandler handed money from Arzu off to Sanderson. Sanderson testified that Chandler then smacked Arzu's phone from his hand. Chandler ran, and Arzu charged at Sanderson in an "aggressive fighting stance." Id. at 17–18, 22, 37–38.
>
> In response to Arzu running toward him, Sanderson testified that he felt threatened and scared and punched Arzu twice in the face. [footnote omitted] Id. at 44. Arzu stumbled backward onto the van that he and Chandler were standing beside when they were talking. Arzu grabbed a machete from the top of the van and swung it at Sanderson, striking him in his right leg. Id. at 19. Sanderson turned to try and run away, but his leg "snapped," and he fell to the ground. Id. at 20. Juan Reyes–Mejia, Arzu's neighbor, testified for Arzu and stated that he watched from his car as Chandler and Sanderson began to "beat" Arzu. Reyes–Mejia testified that Arzu then grabbed a machete from the top of his work van, ran after Sanderson and Chandler as they ran away, and struck Sanderson repeatedly with the machete while Sanderson was on the ground and not fighting back. Id. at 76, 79, 81–83. Arzu struck Sanderson all over his body with the blade of the machete, striking him at least 25 times on his head, neck, shoulder, arms, hands, back, and legs, while repeatedly telling him, "I'm going to kill you." Id. at 20–21. Sanderson attempted to stop the assault by grabbing the machete. Id. at 21. Ultimately, Arzu just stopped striking Sanderson, although Sanderson could not explain what prompted Arzu to stop. Id. Arzu said that he called 911. (Tr. at 89).
>
> Arzu was arrested that night, signed a consent to search form, and the machete was retrieved by Portsmouth Police Officer T. Payne from a cabinet beneath the sink in Arzu's house. Id. at 52, 59, 62. Portsmouth Police Detective E. Westrick spoke with Arzu twice. During the first conversation, Arzu said that Sanderson and Chandler "came over to get money and that they took his phone." Id. at 63. Once Arzu was transported to the police station, he was advised of his Miranda rights in Spanish by Portsmouth Police Officer Montero, and Detective Westrick continued questioning Arzu. Id. at 63, 67.
>
> During this second interview, Arzu explained that he was made aware that Chandler and Sanderson were coming to get money he owed Chandler after crashing a car that he borrowed from Chandler three weeks earlier. Id. at 68, 70, 72. Detective Westrick testified that Arzu said he confronted Chandler and Sanderson about his home having been broken into and wanted to know if they knew anything about it. Id. at 70, 72. Arzu said that Chandler and Sanderson became "aggravated" with that conversation and tried to leave when Arzu began to try to take pictures of the truck

> they were in, which resulted in Chandler and Sanderson attacking Arzu and taking his phone. Id. at 70. According to Arzu, their taking his phone prompted him to grab his machete and chase down Sanderson, who was closest to him, and hit him. Id. Arzu explained to Detective Westrick that he chased Chandler and Sanderson down because he thought they were going to get somebody who had guns. Id. Aside from Arzu's machete, no other weapons were displayed during the incident. Id. at 71. Officer Montero testified that Arzu mostly spoke English during the interview and he "really didn't have to translate anything." Id. at 68.
>
> During trial, Arzu testified in his own defense. He said that he had spoken with Chandler and agreed that Chandler would come to his house to pick up the money he owed. Id. at 84. Arzu said he gave the money to Chandler and then confronted Chandler about items that had been stolen from his home. Sanderson wrote down the phone number of the person who supposedly had those items and passed that piece of paper to Chandler, who gave it to Arzu. Sanderson and Chandler turned around and walked back to Sanderson's truck. Id. at 85–86. Believing that his stolen items were never going to be returned, he took out his phone to take a picture of Sanderson's truck. Id. at 86.
>
> Arzu testified that Chandler and Sanderson got out of their truck and began to attack him; Chandler grabbed his phone and the two of them hit Arzu in the face. He said he thought they were going to kill him, so he grabbed a machete out of his van. When Chandler and Sanderson saw the machete, they ran. Id. at 87. Arzu testified that he knew Chandler "has weapons" and that he was afraid, so he "went after [Chandler]" and "followed [both of] them." Id. at 87–88. Arzu asserted that Sanderson jumped on him, grabbed the blade, and that the two began to fight on the ground. He then grabbed the blade away from Sanderson and struck him in the knee with it. He said Sanderson asked him if he was going to kill him, and Arzu responded that he was not going to kill Sanderson, but that he just wanted Sanderson to leave him alone. Id. at 89.
>
> Sanderson was hospitalized for five days as a result of his injuries, which included a bite mark, approximately twenty-five lacerations, and a broken leg. Id. at 22–28. Sanderson testified to the lingering effects of the assault including his inability to bend all of his fingers, numbness in his hands, fingers, and leg, walking with a limp, scarring, and pain in his hands and legs. Id. at 29–34.

[Dkt. No. 20–4] at 4–7. The Supreme Court of Virginia refused Arzu's subsequent petition for appeal on June 28, 2022. [Dkt. No. 20–5].

On or about August 5, 2022, petitioner timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C.§ 2254, in which he raises the following three claims:

1) "[P]etitioner's counsel was ineffective for not raising" the issue of jurisdiction, i.e., that the offense "occurred in the Commonwealth," in a post-trial motion to strike. [Dkt. No. 1] at 15–16.

5

2) Petitioner's counsel was ineffective for pursuing a self-defense theory instead of a "viable defense . . . of 'heat of passion.'" Id. at 16.

3) Petitioner's counsel was ineffective for not "mak[ing] the prosecution prove that the injury to alleged victim's leg was caused by a machete strike" because the trial judge found the injury to the victim's leg was "permanent and significant," which elevated the offense from unlawful wounding to aggravated malicious wounding. Id. at 18.

The respondent acknowledges that the three claims raised in the federal petition are exhausted because they were raised in the state habeas petition. [Dkt. No. 20] at 6.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may not grant a state prisoner's habeas application unless the relevant state–court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772–73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473–74. Section 2254(d)(1), as amended by AEDPA provides for a "backward–looking ... examination of the state–court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time— *i.e., the record before the state court.*" Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (emphasis added).

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

A "doubly deferential judicial review" applies to "a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino v. Clarke, 972

F.3d 560, 581 (4th Cir. 2020) (quoting Harrington, 562 U.S. at 102–03) (additional citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

The two-pronged Strickland test also applies to claims of ineffective appellate counsel. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). An ineffective counsel claim may be disposed of on either prong of the Strickland test. See Jones v. Clarke, 783 F.3d 987, 991–92 (4th Cir. 2015); Spencer v. Murray, 18 F.3d 229, 232–33 (4th Cir. 1994).

8

## III. Discussion

*A. Claim 1*

In Claim 1, Arzu asserts that counsel rendered ineffective assistance by failing to challenge the evidence of jurisdiction, a claim he raised as Claim (a)(1) in the state habeas proceeding. The circuit court rejected this claim in its order dismissing the state habeas petition and the Virginia Supreme Court affirmed on appeal in a summary order. [Dkt. Nos. 20–4 and 20–5]. In reviewing a state habeas proceeding, the federal court looks to the last reasoned state court decision. See Grueninger v. Dir., Va. Dep't of Corrs., 813 F.3d 517, 525 (4th Cir. 2016) ("In applying § 2254(d) . . . we 'look through' the Supreme Court of Virginia's summary refusal to hear [the habeas petitioner's] appeal and evaluate the Circuit Court's reasoned decision on [the habeas petitioner's] claim.") (citing Brumfield v. Cain, 576 U.S. 305, 313 (2015); Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991)). "In other words, the state-court decision that we review for 'objective reasonableness' under AEDPA's highly deferential standard is that of the" circuit court. Grueninger, 813 F.3d at 525.

> In dismissing state habeas Claim (a)(1), the circuit court found as follows:

> It is the Commonwealth's burden to establish jurisdiction. "[The crime] must take place within this State to give our courts jurisdiction .... Every crime to be punished in Virginia must be committed in Virginia." Farewell v. Commonwealth, 167 Va. 475, 479, 189 S.E. 321, 323 (1937). "'A criminal charge cannot be sustained unless the evidence furnishes the foundation for a 'strong presumption' that the offense was committed within the jurisdiction of the court." Morris v. Commonwealth, 51 Va. App. 459, 464 (2008), quoting Keesee v. Commonwealth, 216 Va. 174, 175, 217 S.E.2d 808, 809–10 (1975).

> Testimony was offered at trial by several witnesses as to where the offense occurred. Sanderson testified that he was attacked in Portsmouth. (Tr. at 15). Officer Wallace testified that he encountered Sanderson, severely wounded and lying on the ground, in Portsmouth. (Tr. at 46–47, 51). This testimony that the offense occurred in Portsmouth was sufficient to create the "strong presumption" necessary to establish jurisdiction, and as such [counsel] was not deficient by not moving to strike the evidence. See Moody v. Polk, 408 F.3d 141, 151 (4th Cir. 2005) (holding counsel not required to file frivolous motions). Because [counsel]

9

> did not deficiently perform, Arzu cannot establish that he was prejudiced by her unprofessional errors. Consequently, his Claim (a)(1) must fail.

[Dkt. No. 20–4] at 9–10.

Here, the circuit court found counsel had no basis to object and that finding was not disturbed on review by the Supreme Court of Virginia. In short, the petitioner's objection, which involved a matter of state law, had no merit.

> "In order to show that counsel was deficient for failing to object," though, "the objection must have merit." Ries v. Quarterman, 522 F.3d 517, 530 (5th Cir. 2008). We defer to a state court's determination that an objection would have been meritless under state law because "in our role as a federal habeas court, we cannot review the correctness of the state habeas court's interpretation of state law." Young v. Dretke, 356 F.3d 616, 628 (5th Cir. 2004).

Soliz v. Davis, 750 F. App'x 282, 293 (5th Cir. 2018).[3]

Because the state court decision was not contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts, Claim 1 will be dismissed. See 28 U.S.C. § 2254(d).

### B. Claim 2

In Claim 2, petitioner alleges his counsel was ineffective for pursuing self–defense at trial rather than arguing "heat of passion," which would have encompassed the argument that the evidence did not establish malice. In dismissing state habeas Claim (a)(2), the circuit court found as follows:

> Arzu asserts in his second claim that his counsel did not "effectively pursue his defense." He argues that his claim of self–defense "had no chance of prevailing" due to the testimony offered by one of his witness's, Juan Reyes–Mejia, that Arzu chased after Sanderson and Chandler as they were running away. (Pet. at 9–10). Arzu argues that his counsel therefore should have done a better job at arguing that Arzu's attacking Sanderson with the machete was the result of heat of passion to

---

[3] See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

10

> evince that he did not have the required intent for aggravated malicious wounding. (Pet. at 9–11).
>
> Arzu cannot establish the first prong of Strickland. The Court in Strickland qualified that defense counsel's strategic ability to defend her client "may be determined or substantially influenced by the defendant's own statements or actions," and that "what investigative decisions are reasonable depends critically on . . . information supplied by the defendant." 466 U.S. at 691. Arzu's admissions to Detective Westrick that he grabbed his machete and ran after Sanderson and Chandler, and that he believed Sanderson and Chandler may have been going back to get a weapon but never saw a weapon, certainly limited [counsel's] options for defense. (Tr. at 70). It was reasonable, given Arzu's statements to police, the extent of Sanderson's injuries, and the testimony of Arzu's own witness, that [counsel] crafted a self–defense theory of innocence. Sanderson was obviously injured, so [counsel] could not argue that Arzu never struck him, but rather had to accept those facts and use them as best she could for Arzu's defense. Because Arzu and Sanderson both agreed that Sanderson and Chandler had gone to Arzu's home to collect a debt, it was reasonable for [counsel] to use this fact to try and characterize Sanderson and Chandler as being angry in wanting to collect that debt. It was also reasonable for [counsel] to see a self–defense theory as the best option and one which could serve as an advantage to Arzu because Chandler and Sanderson went to Arzu's home and Arzu was confronted by two people. If Arzu was adamant in wanting to plead not guilty and having a trial, which appears to be the case because he plead not guilty (Tr. at 4) and maintains in his current petition that he was accosted by Sanderson and Chandler, was being beat by them and only defended himself (Pet. at 10), self– defense appeared to be the best option considering the circumstances. See Whitehurst v. Commonwealth, 63 Va. App. 132, 136 (2014), citing Jones v. Barnes, 463 U.S. 745, 751 (1983) (holding the decision to plead guilty belongs exclusively to the defendant). Such decisions regarding trial strategy are given deference and presumed to be sound until that presumption is rebutted, which Arzu has failed to do here. Strickland, 466 U.S. at 699; Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994); Va. Dep't of Corrections v. Clark, 227 Va. 525, 534, 318 S.E.2d 399, 403 (1984).
>
> The evidence offered during trial, as summarized in this Court's statements when pronouncing Arzu's guilt and sentence, demonstrate that Arzu is unable to establish the requisite prejudice to prevail in his claim. Specifically, in announcing Arzu's sentence, this Court said that Arzu's attack of Sanderson was "horrific" and "grossly disproportionate" to the two punches that Sanderson did to him. (Sent. Tr. at 33). [Counsel] had no control over the testimony offered by Sanderson or Reyes–Mejia or the statements offered by Arzu to police. As a result, Arzu is unable to demonstrate that the result of his proceeding would have been any different if [counsel] had chosen to defend him using another theory.

[Dkt. No. 20–4] at 10–13.

Because the state court decision was not contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts, Claim 2 will be dismissed. See 28 U.S.C. § 2254(d).

*C. Claim 3*

In Claim 3, petitioner alleges that counsel was ineffective by failing "to make the prosecution prove" that the victim's leg injury was caused by the machete strike and by not challenging the evidence of "aggravation," as shown by "permanent and significant injury." In denying this claim, the state court found, in the context of state law, that counsel was not ineffective:

> It is well established that no expert testimony is required to prove a victim's injury is permanent and significant in order to sustain a conviction for aggravated malicious wounding. A victim's "testimony and physical evidence may suffice." See Martinez v. Commonwealth, 42 Va. App. 9, 23–24, 590 S.E.2d 57, 64 (2003); Marrow v. Commonwealth, No. 1041–16–1, 2017 Va. App. LEXIS 116, *11 (Va. App. Apr. 25, 2017); Ballard v. Commonwealth, No. 0304–13–4, 2014 Va. App. LEXIS 188, *6* 10 (Va. App. May 20, 2014). So, the medical records Arzu argues should have been subpoenaed and offered as proof of Sanderson's injuries were not necessary for the Commonwealth to prove its case. (Pet. at 14).
>
> Sanderson was clear in his testimony that when he was struck with the blade of Arzu's machete, his leg snapped. (Tr. at 20). He testified that he had to undergo surgery to repair his leg and a plate and rod had to be inserted, which will never be removed. (Id. at 26–27). He testified about the extensive scarring, he showed his scars to this Court while on the witness stand, and the Commonwealth introduced of [sic] the wounds. (Tr. at 30–32). See Newton v. Commonwealth, 21 Va. App. 86, 90, 462 S.E.2d 117, 119 (1995) (holding scars may constitute a significant and permanent physical impairment).
>
> [Counsel] did object to Sanderson's testimony about his injuries, to his showing this Court the residual scars, and to Sanderson's testifying about information he learned from his doctor regarding the surgeries he endured and how his leg was repaired, but this Court overruled each of those objections. (Pet. at 26, 32). The testimony and visual exhibits offered by the Commonwealth to prove Sanderson's injuries were admissible and clearly evinced Sanderson's injuries as a result of Arzu's attack. . . . "Sanderson's injuries were apparent and the photos of him in the hospital supported his testimony as to what was required to treat him, and all of this evidence was admissible. . . .
>
> While this Court overruled [counsel's] objections to Sanderson's testimony, her

12

attempts were well within professional norms, such that Arzu fails to establish the first prong of Strickland. And because the evidence offered by the Commonwealth was admissible and provided proof of Sanderson's significant injuries and permanent physical impairment, Arzu also is unable to establish prejudice.

[Dkt. No. 20-4] at 13-15.

Because the state court decision was not contrary to, nor an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of the facts, Claim 3 will be dismissed. See 28 U.S.C. § 2254(d).

*D. Rule 55 Motion*

Arzu, citing Rule 55 of the Federal Rules of Civil Procedure, seeks a default judgment against the respondent. See Fed. R. Civ. Proc. 55(a) ("a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). His motion is frivolous.

First, contrary to Arzu's argument, the record establishes that the respondent has not been dilatory, that he filed his response promptly, and that he also promptly cured the non-compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. See, supra note 1. Second, as indicated herein, petitioner does not have a valid claim. Lastly, default judgments are generally not available in habeas actions. See Aziz v. Leferve, 830 F.2d 184, 187 (11th Cir. 1987) (default judgments are not contemplated in habeas corpus cases) (citing United States ex rel. Mattox v. Scott, 507 F.2d 919 (7th Cir.1974); Allen v. Perini, 424 F.2d 134 (6th Cir. 1970)).

####

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 32] will be granted, and petitioner Eric Antonio-Marin Arzu's Rule 55 Motion [Dkt. No. 37] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 5th day of October 2023.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge